UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TOMMY W. THORNHILL and JOHNNIE J. SEAL, JR.**                    **PLAINTIFFS**

**V.**                                    **CIVIL ACTION NO.1:06CV1281 LTS-RHW**

**STATE FARM FIRE AND CASUALTY COMPANY**                    **DEFENDANT**

## MEMORANDUM OPINION

The Court has before it the motion [12] of State Farm Fire and Casualty Company (State Farm) to dismiss the complaint.  For the reasons discussed below, this motion will be denied in its entirety.

State Farm asserts five theories to support its motion to dismiss.  State Farm contends (in the alternative): 1) that the plaintiffs have failed to join the mortgagee of the insured property, Hancock Bank, as a party plaintiff; 2) that the plaintiffs have made an "election of remedies" by accepting benefits paid under their flood coverage, 3) that the plaintiffs' claim for wind damage is "a prior unrepaired loss," 4) that the plaintiffs are "equitably estopped" from asserting a claim under their homeowners policy by their having accepted benefits payable under their flood insurance policy, and 5) that the plaintiffs are no longer a real party in interest because they have assigned the proceeds of their homeowners policy to the SBA as security for an emergency loan.

This is an action to recover property insurance benefits for damage that occurred during Hurricane Katrina.  At the time of the storm the plaintiffs were the named insureds under a homeowners policy (policy number 24-CL-7817-9) issued by State Farm.  The plaintiffs were also insured under a flood policy (policy number 24-RO-0302-5) sold by State Farm under the National Flood Insurance Program.  The insured property was located at 150 Elaine Street, Bay St. Louis, Mississippi.

The insured property was extensively damaged in the storm.  The limits of the plaintiffs' flood coverage ($250,000 dwelling and $52,300 contents) was apparently offered by State Farm and accepted by the plaintiffs, and there is no current controversy concerning the flood policy.  There is a dispute between the plaintiffs and State Farm concerning the homeowners policy over whether there was damage to the insured property caused by a covered peril, i.e. windstorm, and, if so, the extent of this covered loss.  The homeowners policy has coverage limits of $303,000 (dwelling), $30,300 (dwelling extension), $227,250 (personal property), and "actual loss sustained" for loss of use of the insured property.  Plaintiffs allege that there has been a breach of the homeowners insurance policy and that they are entitled to collect policy limits under the homeowners policy.  Plaintiffs also allege that State Farm's claims handling practices were tortious under applicable Mississippi law. (Complaint Paragraphs 45 through 55)

### State Farm's Request That Hancock Bank Be Joined as a Party

Plaintiffs' counsel has represented to the Court, and State Farm has not denied, that the mortgage held by Hancock Bank on the insured property has been fully satisfied from the proceeds of the flood insurance policy.  In these circumstances, there is no reason to require Hancock Bank to participate in this lawsuit.  State Farm offers a number of possible events which might justify Hancock Bank's participation in subsequent litigation, but at this point these events are too speculative to justify requiring the bank to participate in this case as a party.

### State Farm's Theory of Election of Remedies

I find no merit in State Farm's contention that by accepting benefits under their flood policy the plaintiffs have made an election of remedies that precludes collection of benefits under their State Farm homeowners policy.  State Farm acknowledges that these policies cover different perils.  The flood policy covers water damage that is excluded from coverage under the homeowners policy, and the homeowners policy covers windstorm damage that is not a covered peril under the flood policy.  State Farm is apparently arguing that the plaintiffs can lawfully collect insurance benefits under only one of these two policies even if the insured property was damaged by both wind and water.  This is a novel argument, to say the least.

There is no evidence in the record that the plaintiffs were over-insured.  Indeed, there is no evidence in the record that would support any finding concerning the total amount of the plaintiffs' storm damage or the total value of the insured property before the loss.  Without these facts, it is impossible to establish whether the insured value of the property (the only known figures in the equation) is more than, equal to, or less that the total value of the property or the total damage to the property from all causes during the storm.  State Farm repeatedly asserts that the plaintiffs' collection of benefits under the State Farm homeowners policy would amount to a "windfall" and a "double recovery," but State Farm has offered no evidence to support these contentions.

The total value of the insured property sets an upper limit on the amount of insurance a policyholder may collect.  The limits of coverage also set an upper limit on the amount a policyholder may collect.  Assuming a total loss from a covered cause is established, the policyholder would recover the lower of these two upper limits under the policy in question.  Within these limits, the insured may seek recovery under all the policies covering the perils that contributed to the loss.

If, as it appears, there was no question that the damage caused by flooding during the storm was equal to or greater than the flood policy limits, the payment of those limits would reduce the plaintiffs' total losses.  But collection of those limits would not amount to a waiver of benefits for wind damage under the plaintiffs' State Farm homeowners policy.  So long as there are damages that may be established from a peril covered under the homeowners policy, and so long as the insureds have not been fully compensated for their total loss, there has been no "election of remedies."

Indeed, the entire concept of election of remedies has nothing to do with the collection of insurance benefits under policies that cover different perils where there are allegations that both perils contributed to the damage to the insured property. Requiring an insured to elect whether to seek policy benefits under only one of two policies both of which the insured contends to cover perils that contributed to the loss would be a Hobson's choice of the highest order. The insured has paid separate premiums for coverage from different perils, and where the evidence establishes that both of these different perils have caused damage to the insured property, the insured is entitled to look to all of the coverages for which he has paid for compensation.

### State Farm's Theory of "Unrepaired Loss"

State Farm contends that the "anti-concurrent cause" provision in its homeowners policy prohibits the imposition of liability for wind damage sustained during Hurricane Katrina. That provision states:

> *Section One - Losses Not Insured*
> \* \* \*
> *2.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; of (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:*
> \* \* \*
> *c.  Water Damage, meaning:*
> *(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;*

State Farm acknowledges that I have previously held that this contract provision is ambiguous in the context of damages caused by Hurricane Katrina. *Tuepker v. State Farm*, 2006 WL 1442489 (S.D.Miss.2006) (*Tuepker*). State Farm points out that it has appealed this decision, and State Farm contends that the "anti-concurrent cause" provision "was in effect at the time Plaintiffs [sic] loss was adjusted and remains part of the policy at issue and according to Mississippi case law, is applicable and unambiguous until such time as all appeals related to this Court's decision in *Tuepker* are exhausted." (State Farm Motion To Dismiss at page 10)

State Farm reasons, under its interpretation of the "anti-concurrent cause" provision, that because there was water damage to the plaintiffs' property, it is entirely relieved of any liability under its homeowners policy even if there was wind damage that occurred before the arrival of the water. Following the logic of this argument, State

Farm would have no liability under its homeowners policy if there were any water damage, no matter how minimal, that affected the insured property.  In the context of windstorm coverage during a hurricane, this would mean that the windstorm coverage under the homeowners policy would be completely negated in many instances.  Under this interpretation, if an insured property took an inch of water and lost its roof to the winds, State Farm would owe the policy holder nothing under its homeowners coverage.  I find this logic unpersuasive, and I find the "anti-concurrent cause" provision so poorly drafted and ambiguous that I am uncertain whether it could support the interpretation State Farm urges the Court to adopt even if it were interpreted in favor of State Farm.

As I ruled in *Tuepker*, the water damage exclusion in the State Farm homeowners policy is valid.  State Farm is not liable under its homeowners coverage for any damage it can prove to have been caused by water damage, as defined in the policy.  State Farm is liable, however, under its homeowners policy for windstorm damage because there is no exclusion for this type of loss.  The "anti-concurrent cause" provision does not clearly and unambiguously negate the broad coverages provided under the other terms of the State Farm homeowners policy.

Every expert who has rendered an opinion in the Hurricane Katrina cases I have heard has acknowledged that the storm's maximum winds preceded the storm surge flooding.  These experts differ on the length of time that the strongest winds preceded the highest water, but they uniformly agree that the highest winds came ahead of the highest storm surge flooding.  State Farm's argument that the wind damage is not recoverable because it is a "prior unrepaired loss" is apparently premised on the idea that even if the hurricane winds did severe damage to the insured property before the arrival of the storm surge flooding, they would owe the policyholder nothing under their homeowners coverage if the insured property then sustained extensive flood damage.  The reasoning seems to be that if the insured property was damaged by wind, a covered peril under the homeowners policy, no benefits could be collected because the wind damage was exacerbated by flood damage, an excluded peril.  This logic is not supported by the citation of any Mississippi authority, and it seems to me to fly in the face of the many cases decided in Mississippi after Hurricane Camille.

In my view, if there is wind damage covered under a homeowners policy, the right to collect the insurance applicable to that damage would come into existence at the time the damage occurred.  If the insured property were later more severely damaged by flooding, the wind damage would not become payable under the flood policy; the insurer under the homeowners policy would still be responsible for this wind damage.  Accepting State Farm's argument would unfairly shift the responsibility for this wind damage onto the flood insurance underwriter or onto the policyholder who had no flood insurance.

The bottom line in Mississippi jurisprudence, in the context of damage that occurs during a hurricane, is that wind damage is covered under the homeowners

policy and water damage is validly excluded by the homeowners policy. The burden of proof to establish the exclusion is on the insurer. *Tuepker*, supra.

## State Farm's Theory of Equitable Estoppel

State Farm's theory of equitable estoppel appears to me to be a re-hash of the "election of remedies" argument. It is apparently uncontested that the insured property was a total loss and that the destruction of this property was caused, in substantial part, by flooding during the storm. The plaintiffs claimed and State Farm paid the limits of coverage under the plaintiffs' flood policy. State Farm contends that by accepting their flood insurance benefits, the plaintiffs have forfeited their right to collect any benefits under their State Farm homeowners policy. This contention is supported by reasoning that appears to me to be contorted at best. Both the theories of "election of remedies" and equitable estoppel rely upon a core factual issue, i.e. whether the flood insurance benefits have fully compensated the plaintiffs for their losses. State Farm has offered no evidence that would support this lynchpin of these two theories.

State Farm contends that if the plaintiffs are permitted to seek benefits under their homeowners policy, the United State of America will be "compelled to seek recoupment of the erroneous payments under the flood policy." I find no support for this contention. In the first place, it is State Farm that evaluated the plaintiffs' flood insurance claim and decided to pay the flood insurance policy limits. In the second place, there is no indication in the record before me that this payment was not properly made, based on the losses State Farm assessed during the adjustment process.

State Farm also contends that the plaintiffs are now denying that there was any flood damage to the insured property. This is an assertion that has no factual support that I can discern in the record. To say that this logic strains credulity would be a great understatement. To say that by making a claim under their homeowners policy the plaintiffs have committed "Concealment of Fraud" that voids their flood insurance coverage, without evidentiary support for that conclusion, is utter nonsense.

The plaintiffs have two mutually exclusive coverages that the storm potentially brought into play: 1) flood coverage under the National Flood Insurance Program and 2) wind coverage under their State Farm homeowners policy. There was flood damage to the insured property, and State Farm paid the flood insurance coverage limits. By contending that the insured property also sustained damage from hurricane winds, plaintiffs have stated a cause of action under their homeowners policy. Since the State Farm homeowners policy is an "all risks" policy as far as the insured dwelling is concerned, and since windstorm damage is a covered peril as far as the insured personal property is concerned, State Farm will owe policy benefits (up to the lower of the total loss less the flood insurance collection or homeowner policy limits) unless it can meet its burden of proof that the water exclusion in its homeowners policy applies to the thus far uncompensated portion of the plaintiffs' loss. By offering and accepting the flood insurance policy limits, the parties have indicated their agreement that at least

to the extent of these benefits the damage to the insured property was caused by flooding, and the parties are judicially estopped from now denying this.

Whether and to what extent the hurricane winds caused or contributed to the overall damage is the central question in this lawsuit. Equally critical will be the fact questions of total damages sustained and the total value of the insured property. I find that the complaint states a cause of action sufficient to allow this action to go forward. State Farm's motion to dismiss will therefore be denied.

Accordingly, I will deny State Farm's motion to dismiss [12]. An appropriate order will be entered.

**DECIDED** this 15th day of May, 2007.

> s/ L. T. Senter, Jr.
> L. T. SENTER, JR.
> SENIOR JUDGE